THOMPSON & KNIGHT LLP
900 Third Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 751-3001
Facsimile: (212) 751-3113
Ira L. Herman
Jennifer A. Christian

*Attorneys for Defendant Chevron Marine Products LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CANPOTEX SHIPPING SERVICES LIMITED, individually and on behalf of M/V GLOBAL PHOENIX (IMO No. 9565053) M/V CMB GIULA (IMO No. 9588419), and, M/V ASTON TRADER II (IMO No. 9392731),<br><br>　　　　　　　　　　Plaintiff,<br>　-against-<br><br>O.W. BUNKERS (UK) LTD., O.W. SUPPLY & TRADING A/S, O.W. BUNKER USA, INC., CHEVRON MARINE PRODUCTS LLC, ING BANK N.V.<br><br>　　　　　　　　　　Defendants. | 15 Civ. 1351 (VEC)<br><br>**<u>ANSWER TO FIRST AMENDED COMPLAINT FOR INTERPLEADER AND VERIFIED CLAIM</u>** |

Defendant Chevron Marine Products LLC ("<u>Chevron</u>"), by its attorneys Thompson & Knight LLP, files its Answer to Plaintiff's First Amended Complaint for Interpleader (the "<u>Complaint</u>"), respectfully answers upon information and belief, and asserts its verified claim, as follows:

## **<u>THE PARTIES</u>**

1. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraphs 1- 4 of the Complaint.

2. Chevron denies the allegations in paragraph 5 of the Complaint, except admits it is an entity organized and existing under the laws of Delaware, with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California 94583.

3. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 6 of the Complaint.

## JURISDICTION AND VENUE

4. Paragraphs 7 and 8 of the Complaint call for legal conclusions for which no responses are required.

5. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 9 of the Complaint, except admits this action, and its Verified Claim asserted herein, involves admiralty and maritime claims under Fed. R. Civ. P. 9(h).

6. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 10 of the Complaint.

7. Paragraph 11 of the Complaint calls for a legal conclusion for which no response is required, except admits it is authorized to do business within the State of New York.

8. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 12 of the Complaint.

9. Paragraph 13 of the Complaint calls for a legal conclusion for which no response is required.

## FACTUAL BACKGROUND

10. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraphs 14 and 15 of the Complaint.

11. Chevron admits the allegations in paragraph 16 of the Complaint.

## THE M/V GLOBAL PHOENIX

12. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 17 of the Complaint.

13. Chevron denies the allegations in paragraph 18 of the Complaint, except admits it delivered bunkers to Global Phoenix on or about October 16, 2014.

14. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 19 of the Complaint, except admits that it did not directly invoice Canpotex for the referenced bunkers.

15. Chevron denies the allegations in paragraph 20 of the Complaint, except admits that it provided an invoice to OW Bunker USA, Inc. for bunkers supplied to Global Phoenix and has not received payment for such invoice.

16. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 21 of the Complaint, except that the OW (UK) Ltd. Sales Order Confirmation to Canpotex indicates that Chevron is the bunker supplier.

17. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 22 of the Complaint.

## THE M/V CMB GIULIA

18. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 23 of the Complaint.

19. Chevron denies the allegations in paragraph 24 of the Complaint, except admits it delivered bunkers to Cmb Giulia on or about October 20, 2014.

20. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 25 of the Complaint, except admits that it did not directly invoice Canpotex for the referenced bunkers.

21. Chevron denies the allegations in paragraph 26 of the Complaint, except admits it provided an invoice to OW Bunker USA, Inc. for bunkers supplied to Cmb Giulia and has not received payment for such invoice.

22. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 27 of the Complaint, except that the OW (UK) Ltd. Sales Order Confirmation to Canpotex indicates that Chevron is the bunker supplier.

23. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 28 of the Complaint.

## THE M/V ASTON TRADER II

24. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 29 of the Complaint.

25. Chevron denies the allegations in paragraph 30 of the Complaint, except admits it delivered bunkers to Aston Trader II on or about October 31, 2014.

26. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 31 of the Complaint, except admits it did not directly invoice Canpotex for the referenced bunkers and the OW (UK) Ltd. Sales Confirmation Order to Canpotex indicates that Chevron is the bunker supplier.

27. Chevron denies the allegations in paragraph 32 of the Complaint, except Chevron admits it provided an invoice to OW Bunker USA, Inc. for bunkers supplied to Aston Trader II and has not received payment for such invoice.

28. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 33 of the Complaint.

## CAUSE OF ACTION – INTERPLEADER WITH RESPECT TO THE M/V GLOBAL PHOENIX, M/V CMB GIULIA AND M/V ASTON TRADER II

29. To the extent an answer is required to paragraph 34 of the Complaint, Chevron incorporates here its answers to paragraphs 1-33 above and Chevron denies the allegations in paragraph 34 of the Complaint.

30. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraphs 35 and 36 of the Complaint.

31. Chevron denies the allegations in paragraph 37 of the Complaint, except admits it seeks payment for the referenced bunkers.

32. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraph 38 of the Complaint.

33. Chevron lacks knowledge or information sufficient to form a belief about the truth of paragraphs 39-41 of the Complaint.

34. Paragraph 42 of the Complaint calls for legal conclusions for which no responses are required.

35. Chevron denies each and every allegation contained in the Complaint not specifically admitted herein to be true.

## VERIFIED CLAIM IN INTERVENTION

36. Chevron asserts its claim to the funds that have been deposited in the registry of the Court by Plaintiff in this case, in an amount sufficient to fully satisfy its claim to be paid for the bunkers Chevron supplied to the M/V Global Phoenix, M/V CMB Giulia, and M/V Aston Trader II (collectively, the "Vessels"), plus pre-judgment and post-judgment interest, attorneys' fees and costs, and pleads as follows:

## JURISDICTION AND VENUE

37. Subject matter jurisdiction is based upon 28 U.S.C. § 1333. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

38. This case involves and admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure as it involves a maritime lien arising out of the Vessels' failure to pay for fuel bunkers supplied to them. Chevron hereby invokes the maritime procedures and special relief provided for in Rule C of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure for the assert of the funds deposited by Plaintiff and held in the Court's registry relating to the Vessels.

39. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the funds have been deposited by Plaintiff into this Court's registry and such funds are being held as substitute security for the Vessels. Chevron objects to the amount of monies deposited as substitute security as such amount is insufficient to secure multiple claims as required by Supplemental Admiralty Rule E(5)(b).

## PARTIES

40. Chevron is a limited liability company formed under the laws of Delaware, with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California 94583.

The *res* for Chevron's Rule C claim is the monies deposited into this Court's registry by Plaintiff, which is within the jurisdiction of the United States and this Court at all times relevant.

# FACTS

41. Chevron seeks to recover money indisputably due and owing to it under certain agreements for the delivery of fuel oil (the "Purchase Documents"). Copies of the Purchase Documents, invoices, Bunker Delivery Notes, and other relevant documents are attached as Exhibit A and incorporated into this Verified Claim and Answer.

42. Chevron contracted with O.W. Bunker USA, Inc. ("OW USA"), as agent for each of the Vessels.

43. Each of the purchase orders expressly provides that Chevron's Terms of Sale For Marine Fuels (Effective July, 2007) apply to the transaction.

44. Section 2(a) of the Terms of Sale states that when bunker fuel is purchased by an agent on behalf of a principal:

> then such agent, as well as the principal, shall be bound by, and liable for, all obligations as fully and as completely as if the agent were itself the principal, whether such principal is disclosed or undisclosed, and whether or not such agent purports to contract as agent only. Notwithstanding anything to the contrary in this Contract, Principal and agent shall each be deemed to be a Buyer for purposes of this agreement.

Section 2(b) further states that:

> Marine Fuels delivered hereunder are sold and delivered on the financial credit of the vessel being supplied (the "Vessel"), as well as on the promise of the Buyer to pay therefor. Buyer warrants that Seller shall have the rights to assert a lien against the Vessel covering the Marine Fuels delivered for the purchase price, any extra charges incurred in accordance herewith, any taxes billed on the delivery of Marine Fuels or otherwise, and all associated recover costs. Such remedy shall be in addition to, and not in limitation of, any other remedies available to it at law or herein.

## Global Phoenix

45. Bunker contract number OWBUC14TS003, entered into on or about October 6, 2014, called for the delivery of 660 metric tons of RMG-380Max 3.5% Sulfur to Global Phoenix upon Global Phoenix's arrival at the Port of Portland, Oregon, estimated to be between October 11, 2014 and October 14, 2014.

46. Among other things, the bunker contract requires payment for the bunker within 30 days of delivery.

47. Chevron delivered the bunker to Global Phoenix on or about October 16, 2014, in the Port of Portland, Oregon, in accordance with the bunker contract.

48. A Bunker Delivery Note was signed by Global Phoenix's Master/Chief Engineer and stamped with the Seal of the Vessel.

49. The Bunker Delivery Note was also signed by a Chevron representative.

50. The amount owed by Global Phoenix and its agent, O.W. USA, to Chevron for this delivery pursuant to this bunker contract is at least $408,711.42.

51. Payment was due by November 15, 2014.

52. To date, Chevron has not received payment.

53. O.W. Bunker and Global Phoenix have breached their payment obligation for the bunker under the bunker contract and Chevron Terms of Sale.

54. Global Phoenix's officers and representatives acted for Global Phoenix and its owner and/or operator to procure bunkers.

55. Global Phoenix's officer and representatives accepted the bunker on behalf of Global Phoenix by signing the Bunker Delivery Note.

56. The bunker delivered to Global Phoenix was necessary to its mission as the bunker is fuel to be consumed by Global Phoenix to allow it to engage in its commercial shipping operations.

57. Global Phoenix's officers and representatives, at the time of the bunker delivery, were authorized to order necessaries for the account and on the credit of Global Phoenix.

58. Chevron acquired a maritime lien for necessaries in the Global Phoenix under the Federal Maritime Lien Act, 46 U.S.C. §§ 31301-31343 as the physical supplier of bunker fuel.

59. Global Phoenix received the benefit of the bunker delivery and is indebted to Chevron and obligated to pay for such goods and services.

60. Chevron performed all conditions precedent to warrant full and complete payment.

61. Chevron possesses a maritime lien on Global Phoenix for the provision of necessaries, consisting of bunker fuel, enforceable in admiralty in accordance with the provisions of Rule C of the Supplemental Admiralty Rules.

62. Chevron seeks to enforce its maritime lien, pursuant to Rule C of the Supplemental Admiralty Rules against Global Phoenix.

63. Pursuant to this Court's Orders in this case dated March 10, 2015 (Docket Nos. 12 and 13), the interpleaded funds on deposit in this case stand as the substituted *res* for Global Phoenix and the maritime lien claims of claimants are transferred from Global Phoenix to the funds on deposit.

64. The funds on deposit as the substitute *res* for Global Phoenix are presently located in this District.

65. Chevron seeks *in rem* relief, resulting in the release of the funds on deposit to Chevron to satisfy Chevron's maritime lien claim against the funds.

66. Chevron prays for judgment in its favor in the amount of $408,711.42, plus pre-judgment and post-judgment interest, attorneys' fees, and costs, that such amount be paid to Chevron out of the interpleaded funds on deposit in the Court's registry for this case, and for all other relief as this Court deems just and proper.

67. Chevron continues to incur legal fees to collect payment and will provide a full accounting of its legal fees for this matter at a later date.

## Cmb Giulia

68. Bunker contract number OWBUC14TS004, entered into on or about October 14, 2014, called for the delivery of 100 metric tons of IF-380Max 1% Sulfur and 464 metric tons of RMG-380Max 3.5% Sulfur to Cmb Giulia upon Cmb Giulia's arrival at the Port of Portland, Oregon, estimated to be between October 17, 2014 and October 20, 2014.

69. Among other things, the bunker contract requires payment for the bunkers within 30 days of delivery.

70. Chevron delivered the bunkers to Cmb Giulia on or about October 20 in the Port of Portland, Oregon, in accordance with the bunker contract.

71. A Bunker Delivery Note was signed by Cmb Giulia's Master/Chief Engineer and stamped with the Seal of the Vessel.

72. The Bunker Delivery Note was also signed by a Chevron representative.

73. The amount owed by Cmb Giulia and its agent, O.W. USA, to Chevron for this delivery pursuant to this bunker contract is at least $365,621.16

74. Payment was due by November 19, 2014.

75. To date, Chevron has not received payment.

76. O.W. Bunker and Cmb Giulia have breached their payment obligation for the bunkers under the bunker contract and Chevron Terms of Sale.

77. Cmb Giulia's officers and representatives acted for Cmb Giulia and its owner and/or operator to procure bunkers.

78. Cmb Giulia's officers and representatives accepted the bunkers on behalf of Cmb Giulia by signing the Bunker Delivery Note.

79. The bunkers delivered to Cmb Giulia were necessary to its mission as the bunker is fuel to be consumed by Cmb Giulia to allow it to engage in its commercial shipping operations.

80. Cmb Giulia's officers and representatives, at the time of the bunkers' delivery, were authorized to order necessaries for the account and on the credit of Cmb Giulia.

81. Chevron acquired a maritime lien for necessaries in the Cmb Giulia under the Federal Maritime Lien Act, 46 U.S.C. §§ 31301-31343 as the physical supplier of bunker fuel.

82. Cmb Giulia received the benefit of the bunkers' delivery and is indebted to Chevron and obligated to pay for such goods and services.

83. Chevron performed all conditions precedent to warrant full and complete payment.

84. Chevron possesses a maritime lien on Cmb Giulia for the provision of necessaries, consisting of bunker fuel, enforceable in admiralty in accordance with the provisions of Rule C of the Supplemental Admiralty Rules.

85. Chevron seeks to enforce its maritime lien, pursuant to Rule C of the Supplemental Admiralty Rules against Cmb Giulia.

86. Pursuant to this Court's Orders in this case dated March 10, 2015 (Docket Nos. 12 and 13), the interpleaded funds on deposit in this case stand as the substituted *res* for Cmb Giulia and the maritime lien claims of claimants are transferred from Cmb Giulia to the funds on deposit.

87. The funds on deposit as the substitute *res* for Cmb Giulia are presently located in this District.

88. Chevron seeks *in rem* relief, resulting in the release of the funds on deposit to Chevron to satisfy Chevron's maritime lien claim against the funds.

89. Chevron prays for judgment in its favor in the amount of $365,621.16, plus pre-judgment and post-judgment interest, attorneys' fees, and costs, that such amount be paid to Chevron out of the interpleaded funds on deposit in the Court's registry for this case, and for all other relief as this Court deems just and proper.

90. Chevron continues to incur legal fees to collect payment. Chevron will provide a full accounting of its legal fees for this matter at a later date.

### Aston Trader II

91. Bunker contract number OWBUC14TS005, entered into on or about October 16, 2014, called for the delivery of 550 metric tons of RMG-380Max 3.5% Sulfur to Aston Trader II upon Aston Trader II's arrival at the Port of Portland, Oregon, estimated to be between October 22, 2014 and October 27, 2014.

92. Among other things, the bunker contract requires payment for the bunker within 30 days of delivery.

93. Chevron delivered the bunker to Aston Trader II on or about October 31, 2014 in the Port of Portland, Oregon, in accordance with the bunker contract.

94. A Bunker Delivery Note was signed by Aston Trader II's Master/Chief Engineer and stamped with the Seal of the Vessel.

95. The Bunker Delivery Note was also signed by a Chevron representative.

96. The amount owed by Aston Trader II and its agent, O.W. USA, to Chevron for this delivery pursuant to this bunker contract is at least $326,595.45.

97. Payment was due by November 30, 2014.

98. To date, Chevron has not received payment.

99. O.W. Bunker and Aston Trader II have breached their payment obligation for the bunker under the bunker contract and Chevron Terms of Sale.

100. Aston Trader II's officers and representatives acted for Aston Trader II and its owner and/or operator to procure bunkers.

101. Aston Trader II's officers and representatives accepted the bunker on behalf of Aston Trader II by signing the Bunker Delivery Note.

102. The bunker delivered to Aston Trader II was necessary to its mission as the bunker is fuel to be consumed by Aston Trader II to allow it to engage in its commercial shipping operations.

103. Aston Trader II's officers and representatives, at the time of the bunker delivery, were authorized to order necessaries for the account and on the credit of Aston Trader II.

104. Chevron acquired a maritime lien for necessaries in the Aston Trader II under the Federal Maritime Lien Act, 46 U.S.C. §§ 31301-31343 as the physical supplier of bunker fuel.

105. Aston Trader II received the benefit of the bunker delivery and is indebted to Chevron and obligated to pay for such goods and services.

106. Chevron performed all conditions precedent to warrant full and complete payment.

107. Chevron possesses a maritime lien on Aston Trader II for the provision of necessaries, consisting of bunker fuel, enforceable in admiralty in accordance with the provisions of Rule C of the Supplemental Admiralty Rules.

108. Chevron seeks to enforce its maritime lien, pursuant to Rule C of the Supplemental Admiralty Rules against Aston Trader II.

109. Pursuant to this Court's Orders in this case dated March 10, 2015 (Docket Nos. 12 and 13), the interpleaded funds on deposit in this case stand as the substituted *res* for Aston Trader II and the maritime lien claims of claimants are transferred from Aston Trader II to the funds on deposit.

110. The funds on deposit as the substitute *res* for Aston Trader II are presently located in this District.

111. Chevron seeks *in rem* relief, resulting in the release of the funds on deposit to Chevron to satisfy Chevron's maritime lien claim against the funds.

112. Chevron prays for judgment in its favor in the amount $326,595.45, plus pre-judgment and post-judgment interest, attorneys' fees, and costs, that such amount be paid to Chevron out of the interpleaded funds on deposit in the Court's registry for this case, and for all other relief as this Court deems just and proper.

113. Chevron continues to incur legal fees to collect payment and will provide a full accounting of its legal fees for this matter at a later date.

WHEREFORE, Chevron prays for judgment in its favor, that admiralty process pursuant to Rule C be issued to arrest the funds on deposit to secure and satisfy Chevron's maritime lien claim, that funds from the *res* deposited into the registry of the Court in the amount of $1,100,928.03, along with pre-judgment and post-judgment interest, attorneys' fees and costs be paid to Chevron out of such *res*, and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 7, 2015

          Respectfully submitted,

          **THOMPSON & KNIGHT LLP**

By:   */s/ Jennifer A. Christian*
      Ira L. Herman
      Jennifer A. Christian
      900 Third Avenue, 20th Floor
      New York, New York 10022
      Telephone: (212) 751-3001
      Facsimile: (212) 751-3113
      E-Mail: ira.herman@tklaw.com
              jennifer.chrstian@tklaw.com

      *Attorneys for Defendant*
      *Chevron Marine Products LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August 2015, true and correct copies of the foregoing Answer to First Amended Complaint for Interpleader and Verified Claim and Rule 7.1 Statement were served via this Court's CM/ECF electronic notice system on all parties entitled to receive such notice, and additionally served by United States first-class mail upon the following parties:

Gina M. Venezia, Esq.
Peter J. Gutowski, Esq.
Freehill, Hogan & Mahar LLP
80 Pine Street
New York, New York 10005
*Attorneys for Plaintiff*
*Canpotex Shipping Services Ltd.*

Robert E. O'Connor, Esq.
Montgomery, McCracken, Walker & Rhoads LLP
437 Madison Avenue, 29th Fl.
New York, New York 10022
*Attorneys for Defendant*
*O.W. Bunker USA, Inc.*

Bruce G. Paulsen, Esq.
Brian P. Maloney, Esq.
Seward & Kissel LLP
One Battery Park Plaza
New York, New York 10004
*Attorneys for Defendant*
*ING Bank N.V., as Security Agent*

/s/ Jennifer A. Christian

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CANPOTEX SHIPPING SERVICES LIMITED, individually and on behalf of M/V GLOBAL PHOENIX (IMO No. 9565053) M/V CMB GIULA (IMO No. 9588419), and, M/V ASTON TRADER II (IMO No. 9392731),<br><br>                        Plaintiff,<br>-against-<br><br>O.W. BUNKERS (UK) LTD., O.W. SUPPLY & TRADING A/S, O.W. BUNKER USA, INC., CHEVRON MARINE PRODUCTS LLC, ING BANK N.V.<br><br>                        Defendants. | 15 Civ. 1351 (VEC) |

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, John Welch declares under penalty of perjury as follows:

1. I am employed by Chevron U.S.A., Inc., an indirect owner of Chevron Marine Products LLC. My job title is Senior Counsel.

2. I have read the foregoing Answer to First Amended Complaint for Interpleader and Verified Claim and know the contents thereof.

3. The facts and matters asserted in paragraphs thirty-six (36) through one hundred thirteen (113) of the Answer to First Amended Complaint for Interpleader and Verified Claim are true and correct to the best of my personal knowledge, information and belief.

4. The documents attached to the foregoing Answer to First Amended Complaint for Interpleader and Verified Claim are true and correct copies of records maintained by Chevron.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 6, 2015
Houston, Texas

*John Welch*
John Welch